**Doug Hageman**, OSB No. 173654
doug@oxbowlaw.com
OXBOW LAW GROUP, LLC
620 SW Main St. Suite 706
Portland, OR 97205
Telephone: (503) 694-9361

**R. Bruce Carlson**, *pro hac vice* application forthcoming
bcarlson@carlsonlynch.com
CARLSON LYNCH, LLP
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: 412-322-9243
Fax: 412-231-0246

**Eric Zard**, *pro hac vice* application forthcoming
ezard@carlsonlynch.com
CARLSON LYNCH, LLP
1350 Columbia Street, Suite 603
San Diego, CA 92101
Tel: 619-762-1905
Fax: 619-756-6991

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| CAROL FULKERSON, SHELLEY PALMER, and JORDAN OHLDE, individually and on behalf of all others similarly situated, | Case No. |
| Plaintiffs, | **CLASS ACTION ALLEGATION COMPLAINT** |
| v. | |
| BEND MEMORIAL CLINIC d/b/a SUMMIT MEDICAL GROUP OREGON, and SUMMIT HEALTH MANAGEMENT, LLC, | |
| Defendants. | |

## CLASS ACTION COMPLAINT

Plaintiffs Carol Fulkerson, Shelley Palmer, and Jordan Ohlde (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, bring this civil rights class action lawsuit against Defendants Bend Memorial Clinic d/b/a Summit Medical Group Oregon and Summit Health Management, LLC (collectively, "Defendants") for declaratory and injunctive relief, attorneys' fees, expenses and costs pursuant to Title III of The Americans with Disabilities Act of 1990, 42 U.S.C. § 12181 *et seq.* and its implementing regulations (the "ADA"), and Section 504 of The Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* (the "Rehab Act"), in connection with their failure to provide and ensure equal access for individuals with limited mobility at Defendants' clinics ("Defendants' facilities" or "Bend Memorial Clinic"), averring as follows:

## INTRODUCTION

1.      Despite passage of the ADA nearly thirty years ago, and the Rehab Act nearly fifty years ago, to this date, Defendants' facilities are not fully accessible to persons with mobility disabilities who use wheelchairs or scooters.

2.      Defendants have discriminated, and continue to discriminate, against Plaintiffs, and all others who are similarly situated, by denying full and equal access to, and full and equal enjoyment of the services, facilities, privileges, advantages and accommodations at their clinics by failing to provide accessible facilities and failing to remove architectural barriers, where such removal is readily achievable.

3.      Defendants have also failed to make reasonable modifications to their policies, practices, and procedures that are necessary to provide their services, facilities, and accommodations to individuals with mobility disabilities. By failing to undertake efforts to ensure that no individual with a disability is excluded, denied services or otherwise provided medical

services that are different than those that individuals without disabilities receive, Defendants subject Plaintiffs and those similarly situated to discrimination, exclusion, and unequal treatment in violation of the ADA and the Rehab Act.

4.      Specifically, Defendants fail to provide accessible medical equipment, such as accessible examination tables or weight scales, for patients with mobility disabilities, and Defendants rely upon a policy and practice of maintaining such inaccessible medical equipment, requiring patients with mobility disabilities to remain seated in their wheelchairs to be evaluated by a physician, to undergo humiliating and often dangerous transfer procedures to be physically hoisted from their wheelchair to be placed upon inaccessible medical equipment, or, as in the case of Plaintiff Fulkerson, to risk a fall while attempting to climb onto an inaccessible examination table.

5.      Defendants failure to provide accessible weight scales for patients with mobility disabilities forces patients to choose between not being weighed, or, as in the case of Plaintiff Palmer, being physically carried onto the scale in a "bear hug" by one of Defendants' employees, causing significant pain and embarrassment.

6.      Plaintiffs are longtime patients of Defendants; they have been under the care of Defendants or their predecessors for years.

7.      Each Plaintiff has had experiences with inaccessible medical equipment that were at best unnerving and in some cases painful and embarrassing.  Consequently, Plaintiffs have been deterred from returning to Bend Memorial Clinic and have avoided seeking treatment at times.

8.      Defendants' failure to provide accessible medical equipment and their policy and practice of requiring individuals with disabilities to either remain seated for examinations, to forego treatment, or to undergo dangerous transfer procedures to be medically evaluated is

discriminatory, is a denial of full and equal access, results in unequal treatment of individuals with mobility disabilities, and is statutorily prohibited by the ADA and the Rehab Act.

9.    Defendants will continue discriminating unabated unless and until enjoined as Plaintiffs request. Accordingly, Plaintiffs seek declaratory and injunctive relief, enjoining Defendants from continuing their discriminatory conduct, including an order directing Defendants to make readily achievable alterations to their facilities to remove physical barriers to access and make their facilities fully accessible to and independently usable by people with disabilities to the extent required by the ADA and the Rehab Act; an order requiring Defendants to make all reasonable modifications in policies, practices, or procedures necessary to afford all offered goods, services, facilities, privileges, advantages or accommodations to individuals with disabilities on a full and equal basis; and a declaration determining that Defendants' policies and practices of discrimination result in a violation of the ADA, the Rehab Act, and their respective implementing regulations; an award of attorneys' fees, expenses, and costs associated with pursuit of this litigation; and any other such relief that this Court deems just and proper.

## THE RIGHT TO ACCESSIBLE MEDICAL FACILITIES AND SERVICES

10.    The Rehabilitation Act of 1973 was the first law in the United States to seek to eliminate discrimination against, and provide equal access for, people with disabilities.

11.    By the early 1990s, Congressional findings revealed that the Rehab Act alone was not sufficient to protect people with disabilities from discrimination. The ADA was signed into law by George H.W. Bush on July 26, 1990 with the intent to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

12.    When the ADA's implementing regulations were revised in 2010, a regulatory

impact analysis found that "[s]ome of the most frequently cited qualitative benefits of increased access are the increase in one's personal sense of dignity that arises from increased access and the decrease in possibly humiliating incidents due to accessibility barriers. Struggling [to use a non-accessible facility] negatively affect[s] a person's sense of independence and can lead to humiliating accidents, derisive comments, or embarrassment. These humiliations, together with feelings of being stigmatized as different or inferior from being relegated to use other, less comfortable or pleasant elements of a facility . . . all have a negative impact on persons with disabilities." *Final Regulatory Impact Analysis of the Final Revised Regulations Implementing Titles II and III of the ADA, Including Revised ADA Standards for Accessible Design*, U.S. Dep't Just. (July 3, 2010).[1]

13.     Title III of the ADA requires that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

14.     Discrimination on the basis of disability can occur, generally, through a denial of the opportunity to participate in or benefit from goods, services, facilities, privileges, advantages, or accommodations (42 U.S.C. § 12182(b)(1)(A)(i)); from affording goods, services, facilities, privileges, advantages, or accommodations that are not equal to those afforded to other individuals (42 U.S.C. § 12182(b)(1)(A)(ii)); from providing goods, services, facilities, privileges, advantages, or accommodations that are separate from those provided to other individuals (42 U.S.C. § 12182(b)(1)(A)(iii)); or from utilizing methods of administration that have the effect of discriminating on the basis of a disability (42 U.S.C. § 12182(b)(1)(D)).

---

[1] Available at http://www.ada.gov/regs2010/RIA_2010regs/DOJ%20ADA%20Final%20RIA.pdf

15.     The ADA also defines prohibited discrimination to include the following: (i) the failure to remove architectural barriers when such removal is readily achievable for places of public accommodation that existed prior to January 26, 1992 (28 C.F.R. § 36.304(a) and 42 U.S.C. § 12182(b)(2)(A)(iv)); (ii) the failure to design and construct places of public accommodation for first occupancy after January 26, 1993, that are readily accessible to and usable by individuals with disabilities (28 C.F.R. § 36.401 and 42 U.S.C. § 12183(a)(1)); and (iii) for alterations to public accommodations made after January 26, 1992, the failure to make alterations so that the altered portions of the public accommodation are readily accessible to and usable by individuals with disabilities (28 C.F.R. § 36.402 and 42 U.S.C. § 12183(a)(2)).

16.     Section 504 of the Rehabilitation Act of 1973 covers medical care providers that receive federal financial assistance, which can include Medicare and Medicaid reimbursements, and requires that medical care providers provide individuals with disabilities full and equal access to their health care services and facilities.

17.     The Rehab Act further requires reasonable modifications to policies, practices, and procedures when necessary to make health services fully available to individuals with disabilities, unless the modification would fundamentally alter the nature of the services.

18.     The Department of Justice ("DOJ"), pursuant to 42 U.S.C. § 12186(b), has promulgated the ADA Accessibility Guidelines ("ADAAG") in implementing Title III of the ADA. There are two active ADAAGs that set forth the technical structural requirements that a public accommodation must meet in order to be "readily accessible": the 1991 ADAAG Standards, 28 C.F.R. § pt. 36, App. D ("1991 Standards"), and the 2010 ADAAG Standards, 36 C.F.R. § pt. 1191, App. D ("2010 Standards").

19.     Although the ADAAG and the ADA's statutory provisions are unambiguous in requiring medical facilities to be readily accessible to individuals with mobility disabilities, in 2001, former Senator Rick Santorum requested technical assistance from the DOJ on behalf of a constituent as to whether the ADA "requires that hospitals and doctors' offices provide adjustable examining tables for patients with disabilities who cannot use standard-height tables." https://www.justice.gov/crt/americans-disabilities-act-technical-assistance-letters (last accessed September 11, 2020).

20.     In response, the DOJ stated, in part: "Under the policy modification standard, entities subject to the ADA are required to make reasonable modifications in their policies, practices, and procedures if necessary to afford a person with a disability an equal opportunity to participate in the services, facilities, or activities that the entity provides.... Under the barrier removal standard of title III of the ADA, which applies to hospitals and doctors' offices that are public accommodations, a standard-height, nonadjustable examining table constitutes an architectural barrier to persons with certain mobility impairments. Therefore, an adjustable table must be provided if it is readily achievable to do so..." *Id.*

21.     In 2010, to provide further clarity and guidance for health care providers in how to provide services and facilities that are readily accessible to and usable by individuals with mobility disabilities, the DOJ promulgated a technical assistance publication on the ADA and the Rehab Act's requirements, which provides, in relevant part: "Availability of accessible medical equipment is an important part of providing accessible medical care, and doctors and other providers must ensure that medical equipment is not a barrier to individuals with disabilities... Such equipment includes adjustable-height exam tables and chairs, wheelchair-accessible scales, adjustable-height radiologic equipment... It is essential that a person with a disability receives

medical services equal to those received by a person without a disability. For example, if a patient must be lying down to be thoroughly examined, then a person with a disability must also be examined lying down." DOJ, *Access to Medical Care for Individuals with Mobility Disabilities*, at 8 (July 2010) *available at* https://www.ada.gov/medcare_ta.htm (last accessed September 11, 2020).

22.    With respect to examination tables, the DOJ provides, in part: "Traditional fixed-height exam tables and chairs (also called treatment tables or procedure tables) are too high for many people with a mobility disability to use. Individuals with mobility disabilities often need to use an adjustable-height table which, when positioned at a low height, allows them to transfer from a wheelchair. A handle or support rail is often needed along one side of the table for stability during a transfer and during the examination.... An accessible exam table or chair should have at least the following: ability to lower to the height of the wheelchair seat, 17-19 inches, or lower, from the floor; and elements to stabilize and support a person during transfer and while on the table..." *Id.* at 9.

## JURISDICTION AND VENUE

23.    This Court has federal subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343 for claims arising under the ADA and the Rehab Act.

24.    Plaintiffs' claims asserted herein arose in this judicial district, and Defendants do substantial business in this judicial district.

25.    Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## PARTIES

26.    Plaintiffs Carol Fulkerson, Shelley Palmer, and Jordan Ohlde are and, at all times relevant hereto, were residents of Bend, Oregon.

27.    Plaintiff Fulkerson has Multiple Sclerosis, a condition that affects her balance and coordination. While Ms. Fulkerson is able to walk, at times her stability and endurance severely limit her in this major life activity. She is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq.*, and the Rehab Act, 29 U.S.C. § 705(20), and the regulations implementing the Rehab Act set forth at 28 C.F.R. §§ 41 *et seq.*

28.    Plaintiff Palmer has Progressive Multiple Sclerosis. As a result of this condition, Ms. Palmer is quadriplegic and uses a motorized wheelchair. She is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq.*, and the Rehab Act, 29 U.S.C. § 705(20), and the regulations implementing the Rehab Act set forth at 28 C.F.R. §§ 41 *et seq.*

29.    Plaintiff Ohlde has Cerebral Palsy and primarily uses a wheelchair for mobility. He is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 *et seq.*, and the Rehab Act, 29 U.S.C. § 705(20), and the regulations implementing the Rehab Act set forth at 28 C.F.R. §§ 41 *et seq.*

30.    Defendant Bend Memorial Clinic, PC d/b/a Summit Medical Group Oregon, is the largest multispecialty medical group in Central Oregon, with over 120 providers at five locations.[2]

---

[2] *See* https://www.bendmemorialclinic.com/about-us/ (available as of September 11, 2020).

31.     Bend Memorial Clinic, PC is an Oregon Domestic Professional Corporation, and is headquartered at 1501 NE Medical Center Drive, Bend, OR 97701.

32.     Defendant Bend Memorial Clinic, PC is the owner and/or operator of Bend Memorial Clinic medical facilities, including, but not necessarily limited to, facilities located at: 1501 NE Medical Center Drive, Bend, OR 97701; 815 SW Bond Street, Bend, OR 97702; 865 SW Veterans Way, Redmond, OR 97756; 231 East Cascade Avenue, Sisters, OR 97759; 13000 SW Century Drive, Bend, OR 97702; 2090 NE Wyatt Court, Suite 101, Bend, OR 97701; and, 1245 NW 4th Street, Suite 102, Redmond, OR 97756.

33.     Defendant Summit Health Management, LLC is a registered foreign limited liability company organized under the laws of New Jersey, and is headquartered at 150 Floral Ave, New Providence, NJ 07974.

34.     Defendant Summit Health Management, LLC and Defendant Bend Memorial Clinic, PC formed a strategic partnership in 2018 in the formation of Summit Medical Group Oregon.

35.     Defendant Summit Health Management, LLC provides Defendant Bend Memorial Clinic, PC and its facilities with clinical, administrative, and other management services.

36.     Defendants are public accommodations pursuant to 42 U.S.C. §12181(7).

## FACTUAL ALLEGATIONS

## PLAINTIFFS' EXPERIENCES

37.     Plaintiff Fulkerson has been a patient of Bend Memorial Clinic for years. Plaintiff Fulkerson has never been offered an accessible examination table or accessible weight scale during her visits to Defendants' facilities for medical care.

38.     Although Plaintiff Fulkerson has limited mobility, she and others like her rely on and benefit from accessible medical equipment. Indeed, people who live with Multiple Sclerosis often experience "flare ups", when their balance and coordination decrease, requiring the use of assistive devices and accessible equipment.

39.     For example, Plaintiff Fulkerson has been examined on non-adjustable, inaccessible examination tables at Defendants' facilities, but due to her condition, has required the assistance of staff members to assist her onto the tables. Similarly, while she has been weighed at appointments, she has generally had to hold onto staff members' arms at times due to the small platforms and lack of grab bars on the non-accessible scales.

40.     Plaintiff Palmer has been a patient of Bend Memorial Clinic for approximately twenty years and has been consistently denied accessible medical equipment.

41.     For example, in the summer of 2019, Plaintiff Palmer had a routine medical appointment at Defendants' facilities in the early afternoon for a minor, annual procedure. While scheduling the appointment, Plaintiff Palmer was directed to arrive fifteen minutes early to her appointment in order to allow the staff to transfer her onto an inaccessible examination table with a Hoyer lift. However, upon arriving, she was told that the doctor would perform the procedure with her in her chair. Plaintiff reminded the attendant that examination in her chair would be impossible due to the location of the infirmity at issue, and she had requested a Hoyer lift. The attendant left and returned with a Hoyer lift, then informed client that although the staff had "some training" with the device, they had never actually used it to transfer a person. After significant delay, Plaintiff was transferred to the examination table and treated without further incident.

42.     After that appointment, Plaintiff Palmer was subsequently informed that in the future the office would only schedule her for the earliest or latest appointment on any given day,

apparently to accommodate the Hoyer lift procedure. Ms. Palmer explained that this policy would make it very difficult for her to attend appointments because she relies on an attendant for transportation during the day, and the attendant would not be available to provide transportation at these times. She requested that she be allowed to continue scheduling appointments in the middle of the day, but the request was denied.

43.    On another separate recent visit at Defendants' facilities, Plaintiff Palmer was sent to the oncology department to be weighed.[3] When the purportedly accessible scale could not accommodate her wheelchair an attendant physically picked her up and stood on the scale with her. This caused Plaintiff Palmer significant pain and embarrassment. Her shoulder was wrenched and her urinary discharge tube was made visible. Plaintiff repeatedly attempted to tell the attendant to stop, but was unable to project her voice due to manner in which she was being held.

44.    On another occasion, while scheduling an appointment in May, 2020, Plaintiff Palmer requested that a Hoyer lift be provided to facilitate her transfer to the examination table while visiting a gastroenterologist. When she arrived at the appointment no arrangements had been made to provide the lift or otherwise facilitate her transfer, and she was told that there was no Hoyer lift in the office.

45.    Most recently, in July 2020, Ms. Palmer again requested a Hoyer lift when she visited the urologist. Again, upon arrival she was told that she would be examined in her chair. She was also told that she had been given the last appointment of the day because procedures take longer for patients who use wheelchairs.

---

[3] This appears to be the only time any of the non-ambulatory Plaintiffs have been weighed at Defendants' facilities.

46.    Plaintiff Ohlde has cerebral palsy and primarily uses a wheelchair to navigate. Mr. Ohlde has not been weighed in his visits to his primary care physician at Defendants' facilities and has only been examined in his wheelchair.

47.    Approximately two years ago, Mr. Ohlde went to the Defendants' urgent care facility. Because there was not an accessible examination table available, and the staff was not confident that it could transfer Mr. Ohlde to an inaccessible examination table, the staff instead asked Plaintiff Ohlde's mother to transfer him. Mr. Ohlde's mother told the staff that she was not able to transfer him and asked the hospital staff to make the transfer. They declined and Mr. Ohlde spent the next five hours sitting upright in his chair, causing significant fatigue and discomfort.

## DEFENDANTS' FAIL TO PROVIDE ACCESSIBLE MEDICAL EQUIPMENT AND UTILIZE DISCRIMINATORY PRACTICES AND PROCEDURES

48.    On information and belief, Defendants' facilities do not have sufficient accessible medical equipment, such as accessible examination tables, accessible weight scales, and Hoyer lifts, in compliance with the requirements of the ADA and the Rehab Act. Instead, Defendants' generally rely upon a policy and practice of examining patients in their wheelchairs, foregoing treatment, or performing a transfer procedure to lift and place patients who use wheelchairs onto inaccessible examination medical equipment.

49.    Plaintiffs have not made the decision to bring this lawsuit lightly; over the last seven years they have repeatedly met with representatives of Bend Memorial Clinic to advocate for accessible medical equipment. These meetings have resulted in the addition of one accessible scale in the oncology department, and little else.

50.    Plaintiffs brought this issue to representatives of Bend Memorial Clinic at a meeting in May of 2014. Despite multiple conversations over the ensuing years, few improvements have been made in the accessibility of Defendants' facilities.

51.     Plaintiffs have become anxious and fearful about returning to Defendants' facilities due to the dangerous transfer procedures and lack of accessible medical equipment.

52.     Plaintiffs continue to go to Defendants' facilities because that is where their long-term doctors are located. Although they intend to continue visiting Defendants' facilities in the future for medical procedures and treatment, they have been and are actively deterred from seeking all treatment and services that they would otherwise have sought but for the inaccessible conditions that exist there and Defendants' discriminatory policies and practices.

53.     As a result of Defendants' non-compliance with the ADA and the Rehab Act, Plaintiffs' ability to access and safely use Defendants' services and facilities has been significantly impeded.

54.     Plaintiffs are and will be deterred from returning to and fully and safely accessing Defendants' facilities so long as they remain non-compliant, and so long as Defendants continue to employ the same policies and practices that have led, and in the future will lead, to inaccessibility at Defendants' facilities.

55.     Without injunctive relief, Plaintiffs will continue to be unable to fully and safely access Defendants' facilities in violation of their rights under the ADA and the Rehab Act.

56.     As individuals with mobility disabilities who are dependent upon wheelchairs, Plaintiffs are directly interested in whether public accommodations, like Defendants, have barriers that impede full accessibility to those accommodations by individuals with mobility-related disabilities.

57.     Defendants' access violations at Defendants' facilities demonstrate that Defendants employ policies and practices that fail to ensure their facilities are fully and readily accessible and usable.

58.     Absent a change in Defendants' corporate policies and practices, access barriers are likely to persist and/or reoccur in Defendants' facilities even after they have been remediated.

59.     Accordingly, Plaintiffs seek an injunction to remove the barriers currently present at Defendants' facilities and an injunction to modify the policies and practices that have created or allowed, and will create and allow, inaccessibility at Defendants' facilities.

## CLASS ALLEGATIONS

60.     Plaintiffs bring this class action, pursuant to Rules 23(a) and 23(b)(2) of the Federal Rules of Civil Procedure, on behalf of themselves and the following class:  all wheelchair or electric scooter users, and/or other individuals who require the use of an accessible examination table, accessible weight scale, and/or related accessible medical equipment, who have attempted, or will attempt, to utilize the services and facilities at Defendants' facilities.

61.     Numerosity: The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective class members through this class action will benefit both the parties and this Court, and will facilitate judicial economy.

62.     Typicality:  Plaintiffs claims are typical of the claims of the members of the class. The claims of Plaintiffs and members of the class are based on the same legal theories and arise from the same unlawful conduct.

63.     Common Questions of Fact and Law:  There is a well-defined community of interest and common questions of fact and law affecting members of the class in that they all have been and/or are being denied their civil rights to full and equal access to, and use and enjoyment of, Defendants' facilities and/or services due to Defendants' failure to make their facilities fully

accessible and independently usable as above described. The questions of law and fact that are common to the class include, but are not limited to:

    a.   Whether Defendants are public accommodations under the ADA;

    b.   Whether Defendants receive federal financial assistance so as to render them subject to the Rehab Act;

    c.   Whether the class has been denied equal access to Defendants' facilities in violation of the equal access provisions of the ADA and the Rehab Act;

    d.   Whether Defendants' facilities are fully and readily accessible to individuals with mobility disabilities;

    e.   Whether individuals with mobility disabilities receive the same level of care and treatment at Defendants' facilities as individuals without disabilities; and,

    f.   Whether Defendants' have made reasonable modifications to their policies, practices, and procedures when such modifications are required to provide the class equal access to Defendants' facilities and the services provided there.

    64.   <u>Adequacy of Representation</u>:  Plaintiffs are adequate representatives of the class because their interests do not conflict with the interests of the members of the class.  Plaintiffs will fairly, adequately, and vigorously represent and protect the interests of the members of the class and have no interests antagonistic to the members of the class.  Plaintiffs have retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

    65.   Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the Class, making

appropriate both declaratory and injunctive relief with respect to Plaintiffs and the Class as a whole.

## CAUSES OF ACTION

### Violations of the ADA (42 U.S.C. §§ 12181, *et seq.*)

66. Plaintiffs incorporate by reference each and every allegation contained in the previous paragraphs.

67. Plaintiffs bring this claim on behalf of themselves and the putative class of individuals similarly situated defined above.

68. Plaintiffs are individuals with mobility disabilities. Plaintiffs, accordingly, are individuals with disabilities pursuant to the ADA, in that Plaintiffs suffer a physical impairment substantially limiting one or more major life activities. 42 U.S.C. § 12102(1)(A); 28 C.F.R. § 36.105.

69. Defendants are public accommodations under the ADA. 42 U.S.C. § 12181(7).

### Failure to Provide an Accessible Facility

70. The ADA requires that facilities existing prior to the effective date of the ADA that are altered in a manner that affects or could affect their usability must be made readily accessible to individuals with disabilities to the maximum extent feasible. 42 U.S.C. § 12183(a)(2).

71. Defendants have failed to make Defendants' facilities readily accessible to individuals with disabilities to the maximum extent feasible in violation of the ADA.

72. Defendants have discriminated against Plaintiffs and continue to discriminate against similarly situated persons by maintaining and operating Defendants' facilities in a non-compliant state that violates the ADA.

73.    Defendants' failure to provide accessible medical equipment precludes individuals with mobility disabilities who use wheelchairs or scooters, or who otherwise require accessible medical equipment, from equal access to Defendants' services and facilities.

### Failure to Remove Architectural Barriers

74.    The ADA prohibits failing to remove architectural barriers that are structural in nature in existing facilities where such removal is readily achievable. 42 U.S.C. § 12182(b)(2)(A)(iv).

75.    Defendants have the financial resources to remove the architectural barriers at issue – namely, the inaccessible medical equipment – and such removal is and was readily achievable for Defendants.

76.    Defendants have possessed sufficient control and authority to remove the access barriers at Defendants' facilities and to modify its medical equipment to comply with the ADA's requirements, but Defendants have not removed such impediments and have not modified their medical equipment. Instead, Defendants have intentionally maintained Defendants' facilities to be inaccessible and have refrained from making alterations to make Defendants' facilities accessible to individuals with mobility disabilities who use wheelchairs or scooters or who otherwise require accessible medical equipment.

### Denial of "Full and Equal" Enjoyment and Use

77.    Title III of the ADA prohibits discrimination against individuals with disabilities in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation. 42 U.S.C. § 12182(a).

78.    Defendants discriminated and continue to discriminate against Plaintiffs and all others similarly situated by denying "full and equal" enjoyment and use of the goods, services, facilities, privileges, advantages, and accommodations of Bend Memorial Clinic during Plaintiffs' visits and each incidence of deterrence.

### Failure to Modify Existing Policies, Practices, and Procedures

79.    By failing to provide accessible medical equipment, Defendants have engaged, directly, or through contractual, licensing, or other arrangements, in illegal disability discrimination by failing to make reasonable modifications in policies, practices, or procedures where necessary to afford services, privileges, advantages, or accommodations to individuals with mobility disabilities.

80.    Defendants failed to ensure that individuals with mobility disabilities who use wheelchairs or scooters or who otherwise require accessible medical equipment receive and are afforded medical services and facilities equal to those received by and afforded to individuals without disabilities.

81.    Defendants' policies, practices, and procedures have failed to ensure compliance at Bend Memorial Clinic with ensuring equal access and with ADA barrier removal requirements.

82.    Defendants have further failed to create, implement, and maintain policies, practices, and procedures that comply with ADA building design regulations and standards.

83.    A reasonable modification in the policies, practices, and procedures described above will not fundamentally alter the nature of Defendants' services, facilities, privileges, advantages, and accommodations.

84.    Defendants' ongoing and continuing violations of the ADA have caused, and, in the absence of an injunction, will continue to cause harm to Plaintiffs and those similarly situated.

## Violations of the Rehab Act (29 U.S.C. § 701 *et seq.*)

85.     Plaintiffs incorporate by reference each and every allegation contained in the previous paragraphs.

86.     Plaintiffs are individuals with disabilities pursuant to the Rehab Act, in that Plaintiffs suffers physical impairments substantially limiting one or more major life activities. 29 U.S.C. § 705(20); 28 C.F.R. § 41.32.

87.     Defendants receive federal monies and financial assistance, including but not limited to Medicare and Medicaid reimbursements, and are therefore subject to the Rehab Act.

88.     Defendants have, solely by reason of their disabilities, excluded Plaintiffs and persons similarly situated from equal participation in the services, programs, and activities provided by Defendants.

89.     Defendants have denied Plaintiffs and persons similarly situated, solely by reason of their disabilities, the benefits of the services, programs, and activities provided by Defendants.

90.      Defendants have discriminated against Plaintiffs and persons similarly situated by failing to remove architectural barriers, namely the inaccessible medical equipment, which deny persons with disabilities equal access to Defendants' services and facilities.

91.     Defendants failed to make reasonable modifications to policies, practices, and procedures necessary to make health care services fully available to individuals with mobility disabilities.

92.     Defendants failed to provide reasonable access to the services, programs, and activities provided by Defendant in violation of the Rehab Act.

93.     Defendants' ongoing and continuing violations of the Rehab Act have caused, and, in the absence of an injunction, will continue to cause harm to Plaintiffs and those similarly situated.

94.     Pursuant to the remedies, procedures and rights set forth in the Rehab Act and the ADA and incorporated therein, Plaintiffs requests relief as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the class, pray for:

a.     A declaratory judgment that Defendants are in violation of the specific requirements of Title III of the ADA and Section 504 of the Rehab Act described above, and those Acts' respective relevant implementing regulations, in that Defendants' facilities and services, as described above, are not fully accessible to, and independently usable by, individuals who use wheelchairs or scooters or otherwise require accessible medical equipment;

b.     A permanent injunction which directs Defendants to:  (i) take all steps necessary to remove the architectural barriers described above and to bring their facilities into full compliance with the ADA and the Rehab Act's requirements, so that Defendants' facilities and services are fully accessible to, and independently usable by, individuals who use wheelchairs or scooters or otherwise require accessible medical equipment; (ii)  that Defendants change their policies and practices to prevent and to ensure that their facilities and services are accessible to individuals who use wheelchairs and scooters and who may otherwise require accessible medical equipment; and (iii) that Plaintiffs shall monitor Defendants' facilities to ensure that the injunctive relief ordered above remains in place.

c.     An Order certifying the class proposed by Plaintiffs, and naming Plaintiffs as class representatives and appointing their counsel as class counsel;

d.    Payment of costs of suit;

e.    Payment of reasonable attorneys' fees and/or nominal damages; and,

f.    The provision of whatever other relief the Court deems just, equitable and appropriate.


Dated:  September 11, 2020                          Respectfully Submitted,

                                                   By: /s/ *Doug Hageman*
                                                   Doug Hageman, Esq., OSB No. 173654
                                                   **OXBOW LAW GROUP**
                                                   620 SW Main St., Suite 706
                                                   Portland, OR 97205
                                                   Tel: 503-694-9361
                                                   doug@oxbowlaw.com

                                                   R. Bruce Carlson*
                                                   **CARLSON LYNCH, LLP**
                                                   1133 Penn Avenue, 5th Floor
                                                   Pittsburgh, PA 15222
                                                   Tel: 412-322-9243
                                                   Fax: 412-231-0246
                                                   bcarlson@carlsonlynch.com

                                                   Eric Zard*
                                                   **CARLSON LYNCH, LLP**
                                                   1350 Columbia Street, Suite 603
                                                   San Diego, CA 92101
                                                   Tel: 619-762-1905
                                                   Fax: 619-756-6991
                                                   ezard@carlsonlynch.com


                                                   *Application for *Pro Hac Vice* forthcoming

                                                   *Counsel for Plaintiff*